# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NEOBULL DYNAMICS INC.,**<br>*Plaintiff,*<br><br>v.<br><br>**THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,**<br><br>*Defendants.* | **Case No.: 1:26-cv-08457- RA**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER, TEMPORARY ASSET RESTRAINT, PREJUDGMENT ATTACHMENT, AND EXPEDITED DISCOVERY** |

## PRELIMINARY STATEMENT

This is a narrow four-defendant design-patent case supported by completed New York test purchases and physical evidence. NeoBull does not ask the Court to infer infringement from marketplace screenshots alone. A separate purchase was made from each Defendant; all four orders were completed and delivered in New York; the four delivered units were physically inspected and found materially identical; and their corresponding retail boxes share the same white-box format, substantially the same proportions and closure configuration, and similarly placed product/barcode and Amazon Transparency labels. Exhibit C then compares the claimed design against photographs of a representative delivered article across the principal views.

The same evidence also addresses joinder. All four Defendants sold through the same Amazon catalog listing and same ASIN identified in the sealed record. Four independent purchases yielded the same physical article and materially matching retail packaging. Those product-specific facts create overlapping operative questions concerning the accused product stream, design

configuration, fulfillment, infringement, and sales, and go beyond the bare allegation that unrelated sellers infringed the same patent.

NeoBull seeks temporary relief directed to the accused conduct and the proceeds of that conduct: an injunction against continued sales; temporary suppression of the shared accused ASIN identified in sealed Exhibit B; preservation of Amazon records; limited expedited discovery; and a narrowly tailored restraint or attachment of funds attributable to sales of the Accused Product. The requested financial restraint is not an account-wide seizure. It is limited to the lesser of funds available for a Defendant and the gross sales revenue attributable to that Defendant's sales of the Accused Product, subject to prompt accounting and further review by the Court.

## RELEVANT FACTS

### A. NeoBull Owns the Asserted Design Patent

The United States Patent and Trademark Office issued U.S. Design Patent No. D1,097,646 S, titled "Neck Pillow," on October 14, 2025. NeoBull is identified as the assignee. The patent claims "[t]he ornamental design for a neck pillow as shown and described," and its broken-line subject matter forms no part of the claimed design. Warden Decl. ¶ 2 & Ex. A; NeoBull Rep. Decl. ¶¶ 2-4.

### B. All Four Defendants Sell the Same Cataloged Accused Article

The four Defendant storefronts appear as sellers of the same accused neck-pillow product through the same Amazon product-detail page and ASIN identified in the sealed evidence. Test Purchase Decl. ¶¶ 3-5 & Ex. B. Exhibit B includes the Amazon product-detail page, the multiple-seller page, each Defendant's Seller Profile page, and the completed order-and-delivery record.

**C. Separate New York Test Purchases Produced Four Materially Identical Products**

A separate purchase was made from each Defendant for delivery in New York. Each transaction was completed, and each accused product was delivered in New York before this Application was filed. Test Purchase Decl. ¶¶ 6-8 & Ex. B. The declarant physically inspected the four delivered units and found them materially identical in overall shape, proportions, contours, configuration, and appearance. *Id*. ¶¶ 9-10.

The packaging reinforces the physical commonality. The four corresponding retail boxes share the same overall white-box format, substantially the same proportions and closure configuration, and similarly placed product/barcode and Amazon Transparency labels. *Id*. ¶¶ 11-12 & Ex. C. Exhibit C uses photographs of one representative delivered product for the multi-view patent comparison because the four physical units were inspected and no material design differences were observed among them. Exhibit C also shows the four corresponding retail packages in two photographs.

**D. The Accused Product Is Substantially the Same as the Claimed Design**

The side-by-side comparison in Exhibit C shows the claimed design and a representative test-purchased article from the principal front, rear, side, top, and bottom views. The comparison focuses on the particular ornamental contours, proportions, and spatial relationships reflected across the patent drawings. It does not depend on the utilitarian functions of a neck pillow, and the broken-line subject matter identified by the patent forms no part of the claimed design. Test Purchase Decl. ¶¶ 13-15 & Ex. C.

### E. Defendants Are Foreign Marketplace Sellers and the Listed Addresses Do Not Reveal Identifiable Business Premises

Amazon's Seller Profile pages identify business names and addresses in China for each Defendant. Address Decl. ¶¶ 3-4 & Ex. D. For each Defendant, the listed address was located using Gaode Map and an in-person address check was conducted at or around the mapped location. *Id.* ¶¶ 5-7. The resulting photographs principally depict residential or neighborhood settings and do not display a readily identifiable office, storefront, company plaque, or business signage corresponding to the Defendant seller name. *Id.* ¶¶ 8-13. NeoBull does not contend that a residential address is necessarily invalid. The point is narrower: the public seller information has not revealed a readily identifiable operating business or U.S. place of business from which a future money judgment could readily be enforced. NeoBull Rep. Decl. ¶¶ 12-15. This record supports both expedited discovery and a narrowly tailored request to preserve marketplace proceeds pending a prompt hearing.

## ARGUMENT

## I. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER EACH DEFENDANT

New York C.P.L.R. § 302(a)(1) authorizes jurisdiction over a non-domiciliary who transacts business within New York where the claim arises from that transaction. A single purposeful transaction can suffice. See *American Girl, LLC v. Zembrka*, 118 F.4th 271, 276-78 (2d Cir. 2024). Here the showing is stronger than an unconsummated online transaction: each Defendant accepted a separate order for the accused product and completed delivery in New York. Test Purchase Decl. ¶¶ 6-8 & Ex. B. The patent claim arises directly from those New York sales. Exercising jurisdiction is therefore consistent with § 302(a)(1) and due process.

Venue is also proper because Defendants are foreign persons or entities not resident in the United States and may be sued in any judicial district. 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349, 1356-60 (Fed. Cir. 2018).

## II. THE FOUR DEFENDANTS ARE PROPERLY JOINED UNDER 35 U.S.C. § 299

Section 299 permits joinder when the asserted right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the same accused product or process and common questions of fact will arise. 35 U.S.C. § 299(a). Joinder cannot rest merely on allegations that separate defendants infringed the same patent. *Id.* § 299(b*). In re EMC Corp.*, likewise requires shared operative facts beyond a bare allegation of infringement of the same patent. 677 F.3d 1351, 1356, 1359 (Fed. Cir. 2012).

That additional factual nexus is present here. Each Defendant sold through the same Amazon product-detail page and same ASIN, and each separate test purchase yielded the same accused physical configuration. The corresponding packages also share recurring construction and label-placement characteristics. Test Purchase Decl. ¶¶ 3-15 & Exs. B-C. These are shared product-specific facts, not merely parallel allegations of infringement. They support a reasonable inference that the claims concern the same cataloged accused product stream and create common factual questions concerning source, design configuration, fulfillment, infringement, and sales. See *In re EMC Corp.*, 677 F.3d 1351, 1358-60 (Fed. Cir. 2012). Recent Schedule A decisions underscore the need for concrete common facts rather than unsupported common-source allegations. See *CJB Global Imports, Inc. v. The Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 26 Civ. 6568 (NRB), ECF No. 19, at 12-14 (S.D.N.Y. Aug. 26, 2026). Unlike CJB, the record here contains completed purchases, physical inspection of the delivered products, and recurring packaging evidence. If the Court nevertheless

has a joinder concern, NeoBull respectfully requests that it be addressed by severance rather than denial of otherwise-supported interim relief.

## III. NEOBULL SATISFIES THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER

A party seeking temporary or preliminary injunctive relief must show irreparable harm, a likelihood of success on the merits (or, where applicable, sufficiently serious questions going to the merits with the balance of hardships tipping decidedly in its favor), and that the balance of equities and public interest support relief. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). NeoBull relies on the likelihood-of-success route. To the extent any marketplace-implementation provision is viewed as mandatory rather than prohibitory relief, NeoBull also satisfies the heightened requirement of a clear or substantial likelihood of success. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 883 F.3d 32, 37 (2d Cir. 2018). An ex parte TRO additionally requires specific facts showing immediate and irreparable injury before the adverse party can be heard and written certification explaining why notice should not be required. Fed. R. Civ. P. 65(b)(1).

### A. NeoBull Is Likely to Succeed on the Merits

The Patent Act imposes liability on anyone who, without authority, makes, uses, offers to sell, sells, or imports a patented invention in the United States. 35 U.S.C. § 271(a). The '646 Patent is presumed valid. 35 U.S.C. § 282(a). The presumption does not eliminate NeoBull's burden to show likelihood of success, but no Defendant has yet presented a substantial validity challenge on this ex parte record. See *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1377-79 (Fed. Cir. 2009). NeoBull owns the patent and has not licensed any Defendant to practice the claimed design. NeoBull Rep. Decl. ¶¶ 2-5; Warden Decl. ¶ 2 & Ex. A.

Design-patent infringement requires the Court first to construe the scope of the claimed design and then to compare the properly construed claim to the accused design under the ordinary-observer test. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 670, 678-80 (Fed. Cir. 2008) (en banc). Current Federal Circuit precedent also requires claim construction to distinguish functional aspects from ornamental aspects; depiction in solid lines does not make every aspect of a feature per se ornamental. *Range of Motion Prods., LLC v. Armaid Co*., 166 F.4th 981 (Fed. Cir. 2026). NeoBull's showing therefore rests on the particular ornamental contours, proportions, and spatial relationships reflected across the '646 Patent drawings, not on the product's utilitarian functions.

Exhibit C supplies the comparison the ordinary-observer inquiry requires. It pairs the patent's front, rear, left, right, top, and bottom views with photographs of a representative delivered article. The test-purchase declarant physically inspected all four delivered units and found no material design differences among them. Test Purchase Decl. ¶¶ 9-15 & Ex. C. Viewed as a whole, the accused article closely reproduces the patented design's ornamental combination of a compact two-tier silhouette, broad curved lower body, elevated rounded head-support portion, recessed central panel, sweeping side contours, and substantially similar relative proportions. See Egyptian Goddess, 543 F.3d at 678-81; *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). This record materially differs from *CJB Global Imports, Inc. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, No. 26 Civ. 6568 (NRB), ECF No. 19, at 8-10 (S.D.N.Y. Aug. 26, 2026), where the plaintiff cancelled its test purchases and the court lacked physical accused products for a meaningful comparison. NeoBull has therefore shown a strong likelihood of proving direct infringement against each Defendant.

### B. Continued Infringement Threatens Irreparable Harm

To establish irreparable harm in a patent case, the patentee must show likely irreparable injury and a sufficiently strong causal nexus between that injury and the infringement. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374-75 (Fed. Cir. 2012). Lost sales and lost business opportunities may constitute irreparable injury when damages would not adequately capture the continuing competitive harm. See Celsis *In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

NeoBull sells products embodying the patented design in the United States through online retail channels. NeoBull Rep. Decl. ¶ 6. NeoBull has experienced adverse effects on its sales as materially identical unauthorized products have been offered in the same online marketplace to the same category of consumers. *Id*. ¶¶ 7-9. The harm is tied to the accused design because Defendants compete using the same ornamental appearance claimed in the '646 Patent, creating substitute sales opportunities for unauthorized copies and reducing NeoBull's control over the commercial presentation and distribution of products embodying the design. Id. ¶¶ 8-11. The precise amount of diverted sales and continuing marketplace harm is difficult to reconstruct after the fact, particularly where the sellers are foreign marketplace operators whose complete records are not yet known. A prompt restraint is therefore necessary pending a hearing.

### C. The Balance of Hardships Favors NeoBull

The requested injunction is directed to one accused product and one common Amazon listing. The requested financial restraint is likewise limited to accused-product proceeds, with excess funds released after the sales cap is calculated. Defendants remain free to sell noninfringing goods and to move promptly to dissolve or modify the restraints. By contrast, continued accused sales would extend the diverted-sales harm, and disbursement of marketplace proceeds to foreign

sellers could materially impair the practical ability to enforce any monetary award. The balance therefore favors temporary, reviewable restraints.

### D. The Public Interest Favors Enforcement of Valid Patent Rights

The public has an interest in the enforcement of valid patent rights and in marketplace competition that does not depend on unauthorized appropriation of protected designs. The requested relief is limited to the accused product and does not prevent Defendants from selling non-infringing merchandise. The public-interest factor therefore favors relief.

## IV. EX PARTE RELIEF IS WARRANTED TO PRESERVE THE STATUS QUO UNTIL A PROMPT HEARING

Rule 65(b) permits relief without advance notice where specific facts show immediate injury before the adverse party can be heard and counsel certifies why notice should not be required. Fed. R. Civ. P. 65(b)(1). Ex parte relief should remain narrow and temporary, preserving the status quo only until a hearing can be held. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). The Second Circuit has recognized that advance notice may defeat effective intellectual-property relief where defendants can quickly move inventory or frustrate enforcement. *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979).

Those concerns are present here. Defendants operate through marketplace storefronts whose offers, account information, and disbursement instructions can be changed rapidly. Advance notice would permit Defendants to remove or migrate the accused offers, dispose of inventory, or cause marketplace proceeds to be disbursed before the Court can preserve the status quo. Test Purchase Decl. ¶ 16; Warden Decl. ¶¶ 4-9. The requested asset restraint is limited to funds attributable to the accused sales and is subject to prompt accounting, a bond or undertaking, and an expedited opportunity to be heard.

## V. TEMPORARY SUPPRESSION OF THE ACCUSED ASIN IS APPROPRIATE

Section 283 authorizes injunctions in accordance with principles of equity to prevent violations of patent rights. 35 U.S.C. § 283. Here, all four Defendants sold the same Accused Product through the same Amazon catalog listing and shared ASIN identified in sealed Exhibit B. Temporary suppression of that accused ASIN is therefore directed at the specific marketplace vehicle through which the accused sales occurred and will prevent continued sales of the Accused Product pending the preliminary-injunction hearing. Amazon should preserve the underlying listing, seller-account, transaction, and historical data while the ASIN is suppressed.

That relief is narrower than closing entire seller accounts. It targets only the accused article identified in sealed Exhibit B and leaves Defendants free to transact in noninfringing goods. It also avoids the practical problem of an enjoined seller simply reactivating or rotating an offer under the same common catalog entry before the hearing.

## VI. A NARROW TEMPORARY ASSET RESTRAINT AND PREJUDGMENT ATTACHMENT ARE WARRANTED

### A. Section 289 Materially Distinguishes This Design-Patent Case from a Utility-Patent Damages Case

The Supreme Court has held that Rule 65 does not authorize a general prejudgment freeze of unencumbered assets where the plaintiff seeks only a legal money judgment. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). The Second Circuit likewise ties equitable asset restraints to the nature of the final remedy sought. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130-32 (2d Cir. 2014). *In Telebrands Corp. v. Guangzhou Keduoqing Technology Co., Ltd.*, No. 25-CV-3646 (JAV), ECF No. 53, at 16-20 (S.D.N.Y. June 5, 2025), the court therefore dissolved an asset freeze in a utility-patent case because 35 U.S.C. § 284 provides compensatory damages and does not provide recovery of an infringer's profits.

This case involves a design patent and a different remedial statute. Section 289 expressly makes a design-patent infringer liable to the patent owner 'to the extent of his total profit.' 35 U.S.C. § 289. The Second Circuit has not squarely decided whether Section 289, standing alone, permits a Rule 65 asset restraint. Courts confronting Schedule A design-patent cases have nevertheless treated Section 289's statutory total-profit remedy as materially different from an ordinary claim for compensatory damages and have granted temporary restraints while expressly considering Grupo Mexicano. See *Dyson Tech. Ltd. v. The Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:22-cv-00664, ECF No. 24 (N.D. Ill. Feb. 25, 2022); *Oakley, Inc. v. The Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:20-cv-05943, ECF No. 25 (N.D. Ill. Oct. 12, 2020). NeoBull therefore requests a temporary restraint narrowly capped to accused-product proceeds pending the Court's prompt review.

**B. Rule 64 and C.P.L.R. Article 62 Independently Provide a Basis for Prejudgment Attachment**

Independently of Rule 65, Federal Rule of Civil Procedure 64 makes available state-law remedies for seizing property to secure satisfaction of a potential judgment. In New York, attachment is available when a plaintiff seeks a money judgment and the defendant is a non-domiciliary residing outside the State or a foreign corporation not qualified to do business in the State. C.P.L.R. § 6201(1). A plaintiff must show by affidavit or other written evidence that it has a cause of action, is likely to succeed, a statutory ground for attachment exists, and the amount demanded exceeds known counterclaims. Id. § 6212(a); *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006). Rule 64 applies that state-law remedy in federal court. See *Cargill, Inc. v. Sabine Trading & Shipping Co*., 756 F.2d 224, 227 (2d Cir. 1985). See also *Ayyash v. Bank Al-Madin*a, 233 F.R.D. 325, 327 (S.D.N.Y. 2005).

New York law also requires an identifiable, real risk that the defendant will not be able to satisfy a judgment; foreign status alone is not enough. *VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 109 A.D.3d 49, 60, 967 N.Y.S.2d 338, 345-46 (1st Dep't 2013). That requirement was recently applied in *Telebrands Corp. v. guangzhoulingyedianzishangwuyouxiangongsi*, No. 25-CV-8558 (DEH), ECF No. 49, at 10-12 (S.D.N.Y. Nov. 26, 2025), where attachment was denied without prejudice because the plaintiff had not offered defendant-specific evidence of an inability to satisfy a judgment and the appearing defendant represented that it would participate in the litigation.

The present ex parte record contains more than the Defendants' foreign status. Each Defendant's own Amazon Seller Profile identifies a China business address. Exs. B, D. Plaintiff investigated each listed address, and the resulting records did not reveal a readily identifiable office, storefront, company plaque, or operating business corresponding to the seller name. Address Decl. ¶¶ 3-13. Plaintiff has identified no U.S. business premises or other readily accessible U.S. assets of any Defendant; the transaction record before the Court is marketplace-based; and Plaintiff does not presently know the receiving financial institution or location to which Amazon will disburse each Defendant's proceeds. NeoBull Rep. Decl. ¶¶ 12-15; Proposed Expedited Discovery Requests Nos. 7-8. These facts do not rest on foreign status alone and, taken together, identify a concrete enforcement risk if the marketplace proceeds are released before the Court can obtain an accounting and Defendants can be heard. NeoBull knows of no counterclaim held by any Defendant. NeoBull Rep. Decl. ¶ 14.

Telebrands I confirms that Rule 64 and C.P.L.R. Article 62 provide the proper procedural route when their requirements are supported by evidence. See *Telebrands Corp. v. Guangzhou Keduoqing Technology Co., Ltd.*, No. 25-CV-3646 (JAV), ECF No. 53, at 20-21 (S.D.N.Y. June

5, 2025). NeoBull has therefore filed a separate attachment motion. In addition, if the Court prefers not to enter an ex parte order of attachment before Amazon's accounting fixes the amount to be secured, C.P.L.R. § 6210 permits the Court, upon a motion for attachment on notice, to enter without advance notice a temporary order prohibiting a garnishee from transferring assets pending the attachment determination. NeoBull requests that narrower interim protection as an alternative, followed by prompt notice and a return date set by the Court.

### C. The Requested Financial Restraint Is Deliberately Limited

NeoBull does not request a blanket freeze of all Defendant assets. The proposed order directs an initial short hold only long enough for Amazon to calculate accused-product sales and then limits the restraint to the lesser of (i) funds held for the Defendant and (ii) gross sales revenue attributable to the Accused Product. Gross revenue is an objective ceiling on any total-profit award and prevents the restraint from exceeding the amount generated by the accused sales before the Court receives a fuller accounting of costs and deductions. Defendants may move immediately to dissolve or reduce the restraint, and unrelated funds above the cap must be released.

## VII. GOOD CAUSE EXISTS FOR LIMITED EXPEDITED DISCOVERY FROM AMAZON

Rule 26(d)(1) permits discovery before the Rule 26(f) conference when authorized by court order. Courts in this District apply a flexible standard of reasonableness and good cause, with careful scrutiny for ex parte requests. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). Where early discovery is sought to identify or locate defendants, courts also consider the specificity and necessity of the requested information and the absence of practical alternatives. See *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010).

Good cause is substantial here. Amazon possesses records needed to identify the persons or entities behind the four seller accounts, verify current and historical service addresses, obtain active email addresses and telephone numbers, identify related seller accounts, preserve account and fulfillment evidence, and quantify sales of the accused product. The requested discovery is limited to those subjects. NeoBull therefore requests authorization under Rule 26(d)(1) to serve an expedited Rule 45 subpoena on Amazon substantially in the form submitted with the Application, with a proposed return date of seven (7) business days after service, subject to Amazon's rights and obligations under Rule 45.

## VIII. ELECTRONIC RULE 65 NOTICE SHOULD BE AUTHORIZED AFTER THE TEMPORARY RELIEF IS IMPLEMENTED

NeoBull requests authorization to provide notice of the TRO, Order to Show Cause, Complaint, and supporting papers by electronic means reasonably calculated to reach each active Amazon seller account, including Amazon seller messaging and any account-associated email addresses disclosed by Amazon. This is a request concerning notice of the Rule 65 proceedings. It is distinct from formal service of process under Rule 4.

That distinction matters after *Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025), which held that, where the Hague Service Convention applies to service on China-based defendants, the Convention does not permit email service under Rule 4(f)(3). The Convention does not apply, however, when the address of the person to be served is not known. Id. NeoBull does not ask this TRO motion to deem electronic Rule 65 notice formal service of the summons and Complaint. The requested electronic transmission is limited to prompt notice of the TRO proceedings and preliminary-injunction hearing; formal service will be addressed separately based on the address information developed through expedited discovery.

## IX. SECURITY AND THE C.P.L.R. UNDERTAKING SHOULD BE SET IN THE AMOUNT THE COURT DEEMS PROPER

Rule 65(c) requires security in an amount the Court considers proper, and C.P.L.R. § 6212(b) requires an undertaking in an amount fixed by the Court, not less than $500, for an attachment. NeoBull respectfully requests that the Court set a combined security and undertaking in an amount it deems appropriate in light of the four Defendant accounts, the accused-product-limited restraint, and Defendants' right to seek prompt modification or dissolution.

## CONCLUSION

For the foregoing reasons, NeoBull respectfully requests that the Court enter the proposed Order to Show Cause and Temporary Restraining Order, direct temporary suppression of the shared accused ASIN identified in sealed Exhibit B, enter the requested temporary asset restraint and prejudgment attachment, authorize expedited Rule 45 discovery from Amazon and prompt electronic notice of the Rule 65 proceedings, and grant such other relief as the Court deems just and proper.

Dated: October 15, 2026

Respectfully submitted,

Alexander Warden, Esq.
alexander.warden@walflaw.com
West Atlantic Law Firm, PLLC
104 West 40th Street, Floor 4
New York, NY 10018
Counsel for Plaintiff NeoBull Dynamics Inc.